Wealthy Millbrae has previously been submitted and will take up Flextronics International v. Panasonic Corporation. Good morning, Your Honors. Good morning, Mr. Tompkins. I'm here with my colleague, Evan Boyle, representing Flext, the appellee. Flext alleges that the appellants agree among themselves to restrain trade in the market with the passers. They did so by reaching price and production coordination agreements, by allocating markets and customers, and by targeting the prices of large customers, like Flext, whose prices set market benchmarks. The appellees did this, in part, using the same subcommittee of the same Japanese Trade Association that was used to further the conspiracies alleged in the resistors and capacitors case. The appellees met at those subcommittee meetings, JADA subcommittee meetings. They exchanged their confidential price and production information, and their forecasts of that same confidential price information. Underscore here, for the court, the word confidential. Prices in the inductor's industry are set by individual negotiation, or bidding, almost entirely, and they are confidential, highly confidential. It's the most closely guarded secrets in the industry. Let me ask you a question. You have in your complaint, you know, statements about it's not time to reduce prices, ongoing price correction, suppression of price reductions, but you don't characterize that as invitations to collude in your briefs, and you don't cite invitations to collude as a plus factor in your complaint. Can you explain, do you consider that to be an invitation to collude or not? We did argue in the brief, Your Honor, that the statement, now is not the time to reduce prices, which I believe was made by NCC's president, who at the time was president of JADA, was an invitation to collude, and an invitation to collude is a well-established plus factor. We did not argue that point as a separate plus factor in the briefs, because the evidence, the record is clear that there's more than sufficient evidence that the defendants restrained trade in the market for inductors without mentioning the invitation to collude, which did involve admittedly a non-defendant speaker at that example you're citing. The point that the inductors market is prices are confidential is critical to understand The price correction, price reduction suppression, that's a Panasonic employee. I'm sorry, Your Honor, I think you're referring to it as not the time to reduce prices. Right, that is the chairman of JADA, not a defendant. Let me ask you, how could you ever have a price-fixing case without parallel conduct? Separate from parallel pricing. How could you ever have a price-fixing case without parallel conduct? I'll give an example. You know the Evergreen case? Parallel pricing, excuse me. Let's take parallel pricing out of the equation. Go ahead, please. The Evergreen case in the First Circuit is a case in which the competitors are alleged to have taken a series of actions to exclude a potential market entrant, an aspiring market entrant. And in that case, the actions are not entirely parallel because the common motive allegedly was to prevent this new market entrant from joining the market. Similarly, in the high-tech employees case, there were seven parallel agreements that covered seven defendants. But all 21 of them were not covered by precisely parallel agreements. But you're right, Pitchco, that generally speaking, you know, Most of the time, that is going to be true. And oftentimes, a player can allege any parallel conduct that's going to suggest there wasn't a conspiracy, as in the Bonaparte case. The Paley site, which is unpublished, but which involved a situation sort of like Evergreen were. The allegation was that the defendants in that case had taken various actions to exclude a potential market participant. But in that case, the court said the actions were so dissimilar, and critically, there was no evidence that they had any common reason to exclude that plaintiff beyond the simple reason of not having another competitor that they each individually shared. The thing that distinguishes this case from musical instruments and from the DRAM case is that in this case, there is no pro-competitive justification for information that was shared. There is no plausible, and I would submit no, even neutral explanation for in a market where prices are confidential, sitting down with your competitors and telling them your current prices and your future prices. In the musical instruments case, the price exchanges were in service of a lawful purpose, that is, implementing the minimum prices that a common customer wanted. And in the DRAM case, of course, it's not illegal to reduce your capacity. Here, this is like coordinated pretrial, where the circuit said that there's no reason to put these price announcements out there except to tell your competitors that you're moving prices, and there's no competitive reason to do it. And here, there's no competitive reason, similarly, for the defendants in this case, the appellees specifically, to share their confidential prices. Can we talk about your market conditions, a plus factor? You're alleging it's a plus factor. The defendants' global market share declined 7% during the conspiracy period. Can you explain how that would be consistent with all of your other allegations that there were barriers to entry, few new market entrants, consolidation, that the Chinese citric acid manufacturers had difficulties in the marketplace because their products were viewed as low quality or lower quality? Oh, right. Yeah, I mean, the conspiracy wasn't perfect. Over the course of time, the conspirators, despite their best efforts, did start to lose market share, although I note that those numbers you're citing, Judge Koh, are worldwide numbers. And in the United States, as we allege in our complaint, my recollection, in the United States, as we allege in our complaint, for U.S. customers, the Chinese entrants to the market were not able to make substantial progress until the very end of the conspiracy period. If you look at our figures near the end of the complaint, the numbers go from 6% to 16% right around the time the Plexus purchase, right around the time the conspiracy fell apart from the DOJ investigation and became apparent. But you're right that the conspiracy wasn't perfect. And so, just like the conspiracy, I'm sure, did not eliminate price erosion. Prices did fall, generally speaking, over the past period. It slowed that erosion, and it slowed the rate at which other competitors could have or would have entered the market. The district court did not credit Plexus' allegations, despite their pessimistic, despite allegations as specific as better prices were assessed while we suppressed price reduction. Despite comments like that, the district court didn't credit them, primarily because the district's court got caught up in the supposed requirement that parallel pricing allegations are required. And they aren't. There is no case law that says or suggests that we're not in this circuit and not in the Supreme Court that a plaintiff must allege parallel pricing. In fact, the case law is to the contrary. There is no allegation of parallel pricing in these cases. No allegation of parallel pricing in the DRAF case, also in the circuit, and there's no allegation of parallel pricing that was integral to the case in the Tuamalu case. All of those cases involved different agreements to restrain trade that inflated prices that didn't necessarily cause prices to be parallel. And, critically, in none of those cases did the court articulate anything to suggest that parallel prices were the sine qua non of the antitrust complaint. But let's talk about you do try to allege parallel pricing, right? You say there's a 5% differential between the prices of Murata TDK token  What if that 5%, that's just the market? That that is the market for that product? We did try to allege parallel pricing, and I think we did adequately allege it under the circumstances of relying on the expert that we retained after the first dismissal order. But you're right that the parallel pricing allegations, certainly as to appellees, are not perfect. Because, again, prices are confidential. We allege parallel pricing. We said prices moved in parallel throughout the conspiracy period. We said they tended to move together, and as to some appellees, tended to come together later in the conspiracy period. But we had to allege that most of those allegations, based on public data, that the district court held was not specific enough. There was no way to plead more specific data, because, again, prices are confidential. As to some defendants, we had enough purchases, like a very large purchaser, that we could perform statistical analysis. And as to appellees, we could not. But that can't be a bar in the courthouse door, because if it were, then you would have to have purchased large quantities of every product from all of the defendants when you allege a conspiracy in a market where prices are confidential. And that is not the law at all. It is absolutely clear that if you purchase from one conspirator, you don't have to purchase anything from other conspirators, and they're still liable because of separate liability. Did you say that you wanted to reserve any time for rebuttal or not? I didn't hear that. Yes, I don't know if I mentioned it, but I was going to reserve four minutes. But I'm happy to reserve four and a half if the court has no further questions. Okay, yeah, you may reserve four and a half. Mr. Garth. Thank you, Judge Wardlaw, and may it please the court. After giving Flex numerous opportunities to fix its defective Section 1 claim, the district court properly concluded that Flex's fourth amended complaint should be dismissed, and this litigation should come to an end. There's no basis for this court to overturn Judge Davila's careful handling of this case and allow Flex's claim to proceed any further. I'd like to begin with some context, Your Honors. The smoke that precipitated this litigation was a report of bid rigging by a separate set of defendants with respect to a particular customer. But the big rigging defendants have been dismissed from this action, and all that remains is a general price-fixing claim with respect to the defendants here, which has nothing to do with the bid rigging that was reported, and that's based solely on an allegation that these defendants exchanged pricing and market conditions information at Jada Trade Association meetings. Counsel, here's my problem with the case. We're talking about motion to dismiss, right? There are allegations in the fourth amended complaint suggesting pretty robust information exchanges. There are a number of allegations that go towards the plus factors. It may not be good enough. They're expert on parallel conduct and like for purposes of summary judgment, but we're talking about a motion to dismiss outright. So it seems to me that the district court review and analysis of the plus factors seem to kind of take it in isolation, these little buckets, and analyze it. And as I understand it, you're supposed to look at it holistically and determine whether it survives a motion to dismiss. So I'm not sure that really cramped reading of these allegations and putting them in isolation is the right way to disprove this complaint. Where am I going wrong in this? Sure, Judge Wendel. I think that's an unfair characterization of what Judge Davila did here, and I think, look, ultimately they have to meet the legal requirements for stating a claim under the pleading standards that this court is well aware of. I mean, just to start with parallel conduct, because that is an element that this court has looked to in this sort of claim that others have as well. The sole allegation where they attempt to allege any parallel pricing is in paragraph 39 of the complaint, and that allegation includes a smattering of different products, prices for different products. It is only one price, for example, of Tsugami's product, and it actually shows prices going down over time. So I think just to start with parallel conduct, there's absolutely no basis to find in this complaint in the allegations that they've alleged parallel pricing conduct. And with respect to the allegations of information sharing, granted, there are several pages in the complaint, but really what it boils down to is a discussion of allegations of aggregate average pricing information, things like market conditions and the costs of raw materials, and generalized conclusory allegations, which almost never refer to the specific plaintiff's defendants before this court. And I'd be happy to walk through those allegations, but, you know, at the very most, Judge Nguyen, they've come up with some smoke, but when you actually look at the allegations, there's really nothing there, as Judge Davila concluded. And I think, you know, what really gives away the game for plaintiffs here is the first page of their reply brief, where they have three bullets, which presumably amounts to what they think their best allegations are. And I think if you look at those three bullets, and it's on page one of their reply brief, I mean, the first thing that you would note is there's no citations to any paragraphs in the complaint. They're simply citing to what they've characterized in their opening brief. But when you go... One of the allegations relating to Dr. Lam analyzing the purchase data and indicating that prices for similar conductors moved in parallel throughout the conspiracy period. So, of course, Dr. Lam was an expert, and there's no case in which we're aware of where a court has relied on expert opinion about a legal issue in determining a motion to dismiss. I think, you know, even more than that, Dr. Lam's focus was on parallel pricing conduct of the defendants that have been dismissed from this case. Again, with respect to the defendants that are remaining here, really the only allegation of any parallel pricing is in paragraph 539 of the complaint, which is utterly lacking. And the lack of any parallel pricing really does distinguish this case from the others that we're aware of. In the Bonafati v. Conglomerate decision of this court, granted it was unpublished, but there the court said that, you know, given that there are no... there's no allegation of parallel conduct here, we don't even need to get into the plus factors. The Eighth Circuit in the Park-Ermet case said the same thing. My friend referred to the DRAM and the Evergreen case, but in those cases, there was parallel conduct alleged. In fact, in the DRAM case, I believe it was unmitted, undisputed, and so therefore the court's engaged in a discussion of the plus factor. What's unique about this case is they failed to provide any plausible allegations of parallel conduct or a plus factor, certainly in the form of the alleged information sharing. I mean, the two prior cases that are most noteworthy of this court involving allegations of information sharing are the Citric Acid case and the Musical Instruments case. And the allegation... Let me ask you a question. If I look at Judge D'Avila's February 22 order on page 5, it says, in this case, because Flextronics relies solely on circumstantial evidence, it must allege facts tending to exclude the possibility that defendants acted independently, citing Citric Acid. Citric Acid was a motion for summary judgment case, and that quotation, quote, is from Matsushita, which is also the standard for summary judgment, right? And then he repeats that in the August 2020 order under the circumstantial evidence section. He says, Now, Twombly says that is the standard for summary judgment. The plaintiff's evidence must tend to rule out the possibility that defendants were acting independently. Twombly says, on motion to dismiss, you just have to require a complaint with enough factual matter taken as true, which we have to do on a motion to dismiss,  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage. It simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely. And so it says, when allegations of parallel conduct are set out in order to make a Section 1 claim, they must be placed in a context that raises a suggestion that raises a suggestion of a proceeding agreement. So I don't think you really answered Judge Nguyen's question. Like, aren't you and didn't the lower court sort of impose a higher standard than motion to dismiss? I don't think so. Push it over plausible. I agree with your characterization of Twombly and Iqbal. The standard that applies here is whether they've shown not just the possibility of unlawful collusion, but they have to show allegations that would suggest that an unlawful agreement was actually plausible. And the Supreme Court in Twombly and Iqbal did underscore the line between possibility and plausibility. So that does matter.  affirmed the grant of a motion to dismiss. It did the same thing in the Bonafide conglomerate case, granted an unpublished decision, but applying the same standard. And if you hold this case up to musical instruments, I mean that this case is a much easier case on a motion to dismiss for the defendants and musical instruments and musical instruments, there was parallel pricing. As Judge Prakerson noted in his dissent, there were allegations that prices actually increased as demand fell. And in that case, the allegations of information sharing were much stronger as well. In fact, in that case, the FTC itself had opened an investigation. That was a 9,000 member organization. They had open meetings. Trade press were there. Media were there. They were publishing information about what was going on in those meetings. I think there are a lot of ways that you could distinguish what happened in musical instruments. But let me ask you another question. The other point in the lower court opinion is that you have to have parallel pricing, that you can't proceed unless you allege parallel pricing. And that seems inconsistent with Plumbly, which just says any set of facts consistent with the allegations in the complaint would be sufficient. And I don't think there's any case that says you can't have a price-fixing case or Sherman Section 1 Act case without an allegation of parallel pricing. Even DRAM found that contemporaneously restricting production was enough and didn't require parallel pricing. What is the authority to say that you have to allege parallel pricing as the lower court required, which I don't see any authority that says you can't state a claim if you don't allege parallel pricing. That's certainly not in Plumbly. So, Your Honor, what I would say is this. First, I think you do have to show parallel conduct. After all, we're talking about a conspiracy towards an unlawful agreement. You have to show parallel conduct. In a parallel price-fixing case, the parallel conduct that matters is parallel pricing conduct. And this court in the Bonafide conglomerate case said because they hadn't shown parallel conduct, that was the end of the case. There was no need to consider the plus factors. The Eighth Circuit in the Park-Ermit case, which is a published decision from the Eighth Circuit, said because the plaintiff had failed to plausibly plead parallel conduct, no discussion of any plus factors is necessary. We're not aware of a single case in which a complaint alleging price-fixing has proceeded without any plausible allegations of parallel pricing. If you agree to restrict production, wouldn't that affect price? And that could affect the best price-fixing, but you're not actually... I guess when I read Plumbly, I don't see Plumbly as saying, we're going to put a straitjacket on these types of causes of action. Unless you have this and this and this, you cannot survive motion to dismiss or satisfy Rule 8. And so I don't see any case saying, okay, unless you have specific X, you cannot survive a Rule 8 or 12B6 challenge. Right. So I think Your Honor, Bonifati, Conglomerate, and Park-Ermit speak to that. But with respect to Plumbly, I mean, the starting premise of Plumbly was that you had to show parallel conduct, but that parallel conduct was not enough. Again, I'm not aware of a single case in which the court has said, you don't even have to show parallel conduct. But fundamentally, the problem with the plaintiffs in this case is that they haven't plausibly alleged either parallel conduct in the form of pricing or a plus factor in the form of the information exchanges. And I just want to... I think it's very important... I'm sorry. I didn't hear the answer specifically. What is the authority that says you cannot allege a price-fixing case without alleging parallel pricing? What is the authority for that point? I'm putting parallel conduct in a separate bucket. Parallel pricing, as this lower court required. What is the authority for that point? So I think both, Your Honor, both the Bonafide conglomerate and Park-Ermit case speak to that. And they speak to that in terms of the relevant parallel conduct. I'm not aware of a single case in which a court has allowed a claim to proceed where there was no price-fixing case, where there was no sufficient allegations of parallel pricing. Because after all, at the end of the day, their claim is that there was an unlawful agreement to fix prices. And if they can't even show that prices had moved... I mean, if you contrast this case with the Seventh Circuit's decision in the Inouye text messaging case, there you had allegations of information exchanges... Let me ask you another question, then, on this parallel pricing. What they allege is that they have, I guess, their statistical price analysis on Murata, Tayo Yudin, and TDK. And then they say that they made purchases from the defendants in this case, Panasonic, Sagami, Sumida, at prices that were consistent with those other firms' prices at given purchase times over the time period here, and that for Panasonic and Sagami, two of the three defendants, they had the same median trend lines, and then they merged and became identical by 2012. Why is that not enough to allege parallel pricing? So, I think, as Your Honor noted, most of those allegations concern the defendants that are not here. I mean, the only ones that pertain to the defendants that are here are in paragraph 539. And they don't... And I think if you contrast that allegation with the allegations as to the defendants who are absent, you would see the absence of any attempt to show what Judge Davila said was any attempt to show trends, patterns, or relationships in pricing over time. And it's completely absent. And I would like to correct the notion that these prices are highly confidential and unavailable. With respect to some of the firms, that may be true, but prices are widely available generally. In fact, if you go online and look at Sumida's prices for inductors, you could find them today. And in this case, the defendants like Sumida actually produced more than a decade of pricing information to plaintiffs early in the litigation. They did so in the direct class action, and then they did so again in this case. And yet, in the face of over a decade of information like that, all they could conford with is the allegation in 539, which is utterly insufficient and doesn't establish a plausible case of any parallel conduct under the pleading standard. Your Honor, with respect to the allegations about the information sharing, I do want to stress that all they have... But I'll leave it to our presiding judge. I'm sorry, Your Honor, I thought I had a minute left. No, you don't. But please finish your point. You can finish your point. Although I do have to observe that you continually slip back and forth into arguing facts on the ground, inviting us to go on the internet and look up the pricing of inductors when we're really supposed to be just looking at the allegations in the complaint to determine whether they're plausible or not. So it's... I can understand why Judge Davila was tempted to go apply the summary judgment standard if this is how the case is being argued and presented. With respect, Your Honor, paragraph 544 refers to the information that was exchanged to defendants about pricing in the complaint. I don't think Judge Davila applied an improper standard. I think he applied the correct standard. He looked at this case, four separate versions of this complaint, gave the plaintiff multiple opportunities to fix it, and I think correctly concluded that they had failed to show either the requisite parallel conduct in any plausible fashion or any plus factor that this court has ever recognized, particularly in the wake of Citric Acid and that musical instrument case. So we would urge the court to affirm the decision below. Right. Thank you very much, Mr. Garr and Mr. Tompkins. You did reserve a few minutes. Thank you, Your Honor. Thank you. I will take some of these points in reverse order, if possible. I do... The parallel price requirement, as Judge Koh mentioned, was just invented during the course of this case. There is no requirement that you allege parallel pricing in the context of Section 1 insurement. The tax messaging case, the court noted that under certain circumstances, historically unprecedented price increases simultaneously could potentially suggest conspiracy. It has not come close to alleging a requirement that any plaintiff allege parallel pricing. It may not be a requirement. It's pretty tough to do a price-fixing case without it. But, Your Honor, that's because if you call it a price-fixing case, and appellees do this, but price-fixing is just a shorthand that antitrust litigants use to discuss cases where there is a restraint of trade. I mean, if you look at the musical instruments case, the very first sentence of that case is we have to conclude whether the defendants, the appellees, fix prices. That case doesn't have to do with price-fixing. It has to do with whether or not the defendants had illegally conspired to implement an advertising policy regarding minimum prices. It's not a price-fixing case in the sense that you might use it, you know, colloquially. Sure, sure. I'm just talking about as a practical matter to get through somebody's judgment and reveal that file. Well, as a practical matter... You're going to need more. Well, once we have access to discovery, of course, we are hoping we'll have more than we have at this stage. I mean, you know, we have received some pricing data that was incomplete. It doesn't cover all the time periods. It doesn't cover all the prices. And critically, as Judge, I think it was, Coe mentioned, you know, the prices... We allege the prices in paragraph 692 are confidential. And we base that on, you know, purchases of millions, millions, millions of dollars of inductors over the relevant time period. Well, that allegation is entitled to truth and it's not a conclusory. So there may be some prices on catalogs, but as to individual customers, there's a negotiation process and often as the complaint reflects a bidding process that governs those prices. I'll address briefly the Part, Hermat, and the Bonaparte cases because, you know, the parallel conduct and plus-factors analysis, sometimes in these cases where what you're trying to do is look at the context, the totality of the circumstance and see if it's plausible for a conspiracy. The labels don't help. You know, in Part, Hermat, that involved mail-order pharmacies excluded another pharmacy, allegedly excluded another pharmacy from the market. And the court said that the policies they adopted six months apart weren't sufficiently parallel to parallel conduct. Now, contrast that with D-RAM, where this court said that the capacity reductions didn't happen close enough in time to be a plus-factor. In both cases, the analysis is that the conduct wasn't sufficiently similar, wasn't sufficiently close in time to suggest anything than a pro-competitive explanation for the conduct. The precise language used in both cases doesn't matter. The same thing is true in the Bonaparte cases. The case involves a series of random actions to exclude a government subcontractor and there's no reason to believe they're coordinated based on the facts of the case. And the way the court mentioned that was in terms of parallel conduct, but could have just as easily said there was no evidence of evidentiary allocation to support the existence of a conspiracy. And I want to end on that note. I know my time is ending, but you haven't heard me for a competitive explanation or even a neutral explanation for these exchanges because there isn't one. And that does distinguish this case. A lot of cases are hard cases in the antitrust context where you've got to figure out whether reducing capacity is based on competitive concerns or collusion. This isn't such a case. This is like coordinated pretrial where there's no competitive explanation proper and there just isn't one. It should be easy to rule that the information exchanges here were indeed motivated by collusion. Thank you for your time, Ronald. We appreciate being here. I think both counsel for excellent arguments. LexTronics versus Panasonic will be submitted.
judges: WARDLAW, NGUYEN, KOH